b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DWANNA YOUNG, tutrix o/b/o T.Y. | CIVIL ACTION 1:17-CV-01489 |
| VERSUS | JUDGE DRELL |
| UNITED RENTALS, INC., *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMENDATION

Defendant JLG Industries, Inc. ("JLG") filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 26). Because this Court has specific jurisdiction over JLG, its Motion to Dismiss should be denied.

I. Background

Plaintiff Dwanna Young ("Young"), on behalf of minor T.Y., filed a wrongful death action against United Rentals (North America), Inc.[1] ("United Rentals") and JLG Industries, Inc. JLG removed from the Louisiana 28th Judicial District Court in LaSalle Parish to this Court on the basis of diversity jurisdiction.[2]

In her Complaint, Young alleges that Davis Young (T.Y.'s father) was employed in the maintenance department of "Louisiana Pellets, Inc. and German Pellets Plant"[3] in Urania, Louisiana. On October 20, 2016, Davis Young was washing down

---

[1] United Rentals contends Plaintiff erroneously refers to it as "United Rentals, Inc." (Doc. 10).

[2] Plaintiffs are residents of Louisiana, JLG is a Pennsylvania corporation, and United Rentals is a Delaware corporation (Doc. 1).

[3] United Rentals contends the actual name of the plant is "German Pellets Louisiana, L.L.C." (Doc. 44).

the silos as directed, using a 20-foot electric, self-propelled vertical man lift manufactured by JLG. The lift was owned United Rentals and leased to Young's employer.[4] While Davis Young was using the lift, the lift tipped over. Davis Young fell, sustaining fatal injuries to his skull, brain, and spinal cord.

Young alleges the lift machine was defective, unreasonably dangerous, and malfunctioned due to a manufacturing defect caused by JLG. Young alleges that both JLG and United Rentals, the owner of the lift machine, are strictly liable for damages caused by the defective lift. In the alternative, Young contends Davis Young's death was caused by the negligence of Defendants, relying on the doctrine of *res ipsa loquitor*.

United Rentals and JLG answered the complaint (Docs. 9, 10). JLG filed a Motion to Dismiss for Lack of Jurisdiction (Doc. 26).[5] Young filed a brief in opposition to that motion (Doc. 28), to which JLG replied (Doc. 29). JLG's Motion to Dismiss is now before the Court for disposition.

## II. Law and Analysis

### A. Motion to Dismiss for lack of personal jurisdiction.

A non-resident defendant may move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P.12(B)(2). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of

---

[4] United Rentals contends in its Motion for Summary Judgment (Doc. 44) that the lift was actually rented by Elektro Fischer USA, L.P. ("Elektro"), a contractor working at the plant, and not by German Pellets.

[5] United Rentals filed a Motion for Summary Judgment (Doc. 44) that is pending before the District Court.

establishing only a *prima facie* case of personal jurisdiction. See Sangha v. Navig8 ShipManagement Private Ltd., 882 F.3d 96, 101 (5th Cir. 2018) (citing Quick Techs., Inc. v. Sage Grp. PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. den., 540 U.S. 814 (2003)). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion ...." Sangha, 882 F.3d at 101 (quoting Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 812 (5th Cir. 2006)). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." Sangha, 882 F.3d at 101.

    A.    **Personal jurisdiction is established through minimum contacts.**

A federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution. See Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008) (citing Cycles, Ltd. v. W.J. Digby, Inc., 889 F.2d 612, 616 (5th Cir. 1989)). A district court must determine whether both the forum state's long-arm statute and federal due process permit the court to exercise personal jurisdiction. See Johnston, 523 F.3d at 609 (citing Ruston Gas Turbines, Inc. v. Donaldson Co., 9 F.3d 415, 418 (5th Cir. 1993)).

3

Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." See Johnston, 523 F.3d at 609; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)

Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. See La. R.S. 13:3201(B). That statute applies in this case, and JLG concedes the statute is consistent with federal due process (Doc. 26-1, p. 8/17).

Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the nonresident defendant, JLG, comports with federal due process.

There are two types of "minimum contacts"–those that give rise to specific personal jurisdiction (also called case-linked jurisdiction) and those that give rise to general personal jurisdiction. See Johnston, 523 F.3d at 609 (citing Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001)); see also Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Gundle Lining Construction Corporation v. Adams County Asphalt, Inc., 85 F.3d 201, 205 (5th Cir. 1996).

Hopkins argues the Court has both general and specific jurisdiction over JLG.

### 1. This Court does not have general jurisdiction over JLG.

Hopkins contends this Court has general jurisdiction over JLG through its "continuous and systematic" contacts with Louisiana. Hopkins alleges JLG is

4

authorized to do and doing business in Louisiana, has a principal business establishment in Louisiana, conducts regular business activities in Louisiana, and provides an internet website that directs Louisiana residents to locations where JLG sells and services its products.

General jurisdiction is also called "all-purpose" jurisdiction. See Bristol-Myers Squibb Co. v. Superior Court of California, 137 S.Ct. 1773, 1780 (U.S. 2017). General jurisdiction exists when a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic. See Johnston, 523 F.3d at 609 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–19 (1984)). A court may exercise general personal jurisdiction over a defendant when its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting International Shoe Co. v. State of Washington, 326 U.S 310, 317 (1945)). A corporation is generally only "at home" in the state of its incorporation or its principal place of business. See BNSF Ry. Co. v. Tyrrell, 137 S.Ct. 1549, 1558 (U.S. 2017). In this case, JLG is a Pennsylvania corporation with its principal place of business in Pennsylvania.

The Fifth Circuit has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues. See Bowles v. Ranger Land Sys., Inc., 527 Fed. Appx. 319, 321 (5th Cir. 2013) (citing Johnston, 523 F.3d at 611). "The continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Bowles, 527 Fed. Appx. at 321

5

(citing Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V., 249 F.3d 413, 419 (5th Cir. 2001), cert. den., 534 U.S. 1055 (2001)). Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required for a finding of general jurisdiction. Bowles, 527 Fed. Appx. at 321 (citing Johnston, 523 F.3d at 609). Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction. See id.

General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed. See Johnston, 523 F.3d at 609–10 (citing Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 717 (5th Cir. 1999), writs den., 531 U.S. 917 (2000)). The contacts must be reviewed in toto, and not in isolation from one another. See Johnston, 523 F.3d at 609–10 (citing Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 779 (5th Cir.1986), cert. den.. 481 U.S. 1015 (1987)). Vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction. See Johnston, 523 F.3d at 609–10 (citing Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999)).

Hopkins has not alleged or shown that JLG has the extensive contacts with Louisiana required to establish general jurisdiction over JLG. Hopkins contends JLG has an authorized agent for service of process in Louisiana, a business office in Louisiana, and products which are distributed in Louisiana through dealers that sell its products as well as rental companies. Hopkins also contends that JLG's website

6

provides addresses for Louisiana residents to purchase, rent, or repair JLG equipment. Hopkins alleges the lift in question was purchased by United Rentals from JLG in Texas for delivery in Alabama. The lift ultimately ended up in a United Rentals facility in Louisiana.

Louisiana law does not require a foreign entity to consent to jurisdiction as a condition of doing business in the state. Absent state law explicitly requiring consent, courts do not consider "appointment of an agent for process" to be "a waiver of [the] right to due process protection." See Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., L.L.C., 717 Fed. Appx. 394, 398 (5th Cir. 2017) (citing Wenche Siemer v. Learjet Acquisition Corp., 966 F.2d 179, 183 (5th Cir. 1992), cert. den., 506 U.S. 1080 (1993)).

JLG's "business office" in Louisiana is in Baton Rouge. However, that office is used by many businesses. Hopkins has not alleged or shown that substantial business is conducted there by JLG, or that any business is conducted in Louisiana directly by JLG.

JLG's website indicates places where JLG equipment may be purchased, rented, or serviced world-wide. It is not a website devoted exclusively to Louisiana. Moreover, the JLG equipment sales and rentals in Louisiana are through other companies and not from JLG directly.

Therefore, Hopkins's allegations are insufficient to establish this Court's general jurisdiction over JLG.

## 2. This Court has specific jurisdiction over JLG.

Hopkins also contends this Court has specific jurisdiction over JLG. Hopkins contends this cause of action arises out of or results from JLG's contacts with Louisiana because: (1) JLG directed its activities towards Louisiana and this case arose from injuries resulting from those activities; and (2) JLG anticipates that its products will come to Louisiana in the "stream of commerce."

Where contacts are less pervasive, the court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum. See Luv N' Care, 438 F.3d at 469). Specific jurisdiction is also called "case-linked" jurisdiction. See Bristol-Meyers Squibb Co., 137 S.Ct. at 1780. The inquiry whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. See Walden v. Fiore, 571 U.S. 277, 283–84 (2014).

Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment. Gulf Coast Bank & Trust Co. v. Designed Conveyor Systems, L.L.C., 717 Fed. Appx. 394, 399 (5th Cir. 2017) (citing Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011)). Thus, critical to the analysis is whether the exercise of personal jurisdiction in this case comports with due process. See Gulf Coast Bank & Trust Co., 717 Fed. Appx. at 399 (citing Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000), cert. den., 533 U.S. 929 (2001)). The Constitution's Due Process Clause requires that

there be "minimum contacts" between the nonresident defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See Gulf Coast Bank & Trust Co., 717 Fed. Appx. at 399 (citing Int'l Shoe Co., 326 U.S. at 315). To establish that a defendant has minimum contacts with a forum, a plaintiff must identify some act whereby it purposely availed itself of the privilege of conducting activities there, thus invoking the benefits and protections of its laws. See Gulf Coast Bank & Trust Co., 717 Fed. Appx. at 399 (citing Luv N' Care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469–70 (5th Cir. 2006), cert. den., 548 U.S. 904 (2006)). Only contacts that the defendant itself' creates with the forum state may serve as the basis for specific jurisdiction. See Gulf Coast Bank & Trust Co., 717 Fed. Appx. at 399 (citing Walden v. Fiore, 571 U.S. 277, 284 (2014)).

Plaintiffs' principal jurisdictional theory is "stream of commerce." That doctrine recognizes that a defendant may purposely avail itself of the protection of a state's laws—and thereby subject itself to personal jurisdiction—"by sending its goods rather than its agents" into the forum. In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Product Liability Litigation, 888 F.3d 753, 778–79 (5th Cir. 2018) (citing J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 882 (2011)). In In re DePuy Orthopaedics, Inc., 888 F.3d at 779, the Fifth Circuit noted the circuit split over whether mere awareness that a product will be sold in the forum state suffices to support jurisdiction under the stream-of-commerce doctrine, and stated that it has already adopted the expansive view of the "stream of commerce" espoused in Justice Brennan's concurrence in Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S.

9

102, 117 (1987). Accordingly, Hopkins need only show that JLG delivered the lift that injured Davis Hopkins "into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state." In re DePuy Orthopaedics, Inc., 888 F.3d at 779 (citing Ainsworth v. Moffett Engineering, Ltd., 716 F.3d 174, 177 (5th Cir. 2013), cert. den., 571 U.S. 1024 (2013)).

A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum state, and indirectly benefits from the state's laws that regulate and facilitate commercial activity. Seeus Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colorado, 615 F.3d 364, 373 (5th Cir. 2010) (citing Asahi Metal Indus. Co., 480 U.S. 102, 117 (1987)). These benefits accrue regardless of whether that participant directly conducts business in the forum state or engages in additional conduct directed toward that state. See Choice Healthcare, Inc., 615 F.3d at 373 (citing Asahi Metal Indus. Co., 480 U.S. at 117). The "stream of commerce" refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacturer to distribution to retail sale. See Choice Healthcare, Inc., 615 F.3d at 373 (citing Asahi Metal Indus. Co., 480 U.S. at 117).

The Fifth Circuit has consistently held that "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." Luv N' Care, Ltd., 438 F.3d at 470. A state does not offend due process by exercising jurisdiction over an entity that "delivers its products into the stream of commerce

with the expectation that they will be purchased by consumers in the forum State." Luv N' Care, Ltd., 438 F.3d at 470 (quoting World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)). Where a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state. Luv N' care, Ltd., 438 F.3d at 470.

In 2009, RSC was in 40 states[6] including Louisiana.[7] JLG repeatedly contends in its brief that it sold the lift in this case to an RSC rental center in Alabama. However, JLG's invoice shows that JLG sold the lift to RSC in Houston, Texas for delivery to an RSC rental center in Birmingham, Alabama. As that invoice demonstrates, RSC was a nationwide company in 2009. Given the fact that there were RSC centers across the United States,[8] JLG could reasonably foresee that a lift sold to RSC could end up at any of its equipment rental centers in any state. It was foreseeable that equipment purchased by RSC for rental purposes could be transferred to any RSC rental center that had a market for it. Therefore, when JLG sold the lift to RSC, it placed its lift into the stream of commerce with the expectation

---

[6] In 2011, RSC merged with United Rentals. See https://www.unitedrentals.com/our-company/press-room/press-releases/detail/united-rentals-acquire-rsc-holdings#/. The lift in this case was sold by JLG to RSC in 2009 and leased from a United Rentals rental center in Louisiana in 2016.

[7] See Despaux v. RSC Equipment Rental, Inc., 2017-0765 (La. App. 4th Cir. 4/25/18), 246 So. 3d 806, 808, writ den., 2018-1009 (La. 10/8/18), 253 So.3d 794.

[8] In 2009, RSC had 464 branches was in 40 U.S. states and 3 Canadian provinces. See https://www.businesswire.com/news/home/20091111005260/en/RSC-Holdings-Present-Upcoming-Citi-2009-North. In 2011, there were 454 RSC rental locations in 40 U.S. states. See https://www.sec.gov/Archives/edgar/data/1406578/000119312512025359/d269747d10k.htm#tx269747_6. In 2011, RSC merged with United Rentals. In 2018, United Rentals has 997 equipment rental locations in 49 U.S. states and 10 Canadian provinces. See https://www.sec.gov/Archives/edgar/data/1047166/000106770118000006/uri-2017123110k.htm.

11

that it would be used by consumers in the forum state. In re DePuy Orthopaedics, Inc., 888 F.3d at 779.

Therefore, JLG's minimum contacts with Louisiana are sufficient for JLG to reasonably anticipate being haled into court in Louisiana.

### 3. Jurisdiction over JLG does not offend traditional notions of fair play and substantial justice.

Finally, this Court must determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice considering: (1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies. See Luv N' care, Ltd., 438 F.3d at 473 (citing Felch v. Transportes Lar–Mex SA De CV, 92 F.3d 320, 324 (5th Cir. 1996)).

Louisiana has an interest in providing a forum for an action concerning a defective product that was placed in the stream of commerce by a foreign manufacturer, used in Louisiana, and caused injury to someone in Louisiana. See Reed v. Biomet Orthopedics, Inc., 2008 wl 1735162, *5 (W.D. La. 2008).

JLG does business throughout the United States. As pointed out by Hopkins, JLG's lifts and other products are available through Louisiana retailers and rental companies. Answering a product liability lawsuit in Louisiana would not be a burden on or unfair to JLG. Compare In re DePuy Orthopaedics, Inc., 888 F.3d at 781. Therefore, it is fair and appropriate for this Court to assert its jurisdiction over JLG.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that JLG's Motion to Dismiss (Doc. 26) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana on this __19th__ day of December, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge