RECEIVED
SEP 16 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

DWANNA YOUNG, *Tutrix, o.b.o.*            CASE NO. 17-CV-1489
*minor child, Thaniel Young*

vs.            JUDGE DRELL

UNITED RENTALS, INC. and J L G
INDUSTRIES, INC.            MAG. JUDGE PEREZ-MONTES

MEMORANDUM RULING

Before the court are motions for summary judgment filed by defendants United Rentals, Inc. ("United") (Doc. 44) and J L G Industries, Inc., ("J L G") (Doc. 55). Plaintiff filed no opposition to these motions. For the reasons expressed in this ruling, both motions will be GRANTED in full, dismissing all claims by plaintiff, Dwanna Young ("Plaintiff"), as tutrix of the minor child Thaniel Young.

I.      BACKGROUND

*A. Relevant Facts*

Plaintiff is the natural tutrix of Thaniel Young ("Minor"), a child born to Plaintiff and Davis Young ("Young"), who was killed as a result of the events forming the basis of this suit. On October 20, 2016, Young was employed in the maintenance department at German Pellets Louisiana, LLC ("German Pellets") when he fell from a vertical man lift ("Lift") he was using to clean pellet silos. The lift was manufactured by JLG Industries, Inc. ("JLG"), owned by United Rentals (North America), Inc. ("United") and rented to Elektro Fischer USA, LP ("Elektro"), a contractor performing work at the German Pellets plant.

Plaintiff's complaint alleges that on the date of the accident in question, the lift

1

> ...suddenly and without warning, tipped over causing [Young] to fall to the ground, sustaining very serious injuries to his skull and brain as well as his spinal cord, resulting in his death on October 27, 2016. (Doc. 1-1 at ¶ 6).

### B. Procedural History

Plaintiff filed this wrongful death suit in the Twenty-eighth Judicial District Court for the Parish of LaSalle on October 19, 2017, naming United and JLG as defendants. (Doc. 1). JLG removed the suit to this court timely on or about November 13, 2017 citing federal diversity jurisdiction pursuant to 28 U.S.C. § 1332.[1] (Id.). Subsequently, JLG filed a motion to dismiss on the basis of lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). (Doc. 26). By adoption of the report and recommendation issued by the magistrate judge, this court denied JLG's motion, finding that we possessed specific personal jurisdiction over JLG under the stream of commerce theory. (Docs. 47, 53).

During the pendency of the aforementioned motion to dismiss, United filed its instant motion for summary judgment, urging judgment in its favor dismissing all claims against it on the basis that plaintiff fails to prove that it had *garde* of the lift; that plaintiff fails to demonstrate any defect in the lift; and that plaintiff has not shown that the doctrine of *res ipsa loquitor* applies in this case. (Doc. 44-1). Plaintiff filed no opposition to this motion.

Shortly after this court's denial of JLG's motion to dismiss, JLG filed its own motion for summary judgment, asserting entitlement to dismissal of all claims against it based on plaintiff's failure to show that the lift was unreasonably dangerous; that JLG breached any express warranty; or that any breach of duty was the cause of Young's accident and subsequent demise. The motion

---

[1] Plaintiff is domiciled in LaSalle Parish, Louisiana because he is a minor and shares the domicile of his legally appointed tutor. La. Civ. C. Art. 41. JLG is a Pennsylvania corporation with its principal place of business in Pennsylvania. United is a Delaware corporation with its principal place of business in Connecticut. (Doc. 1 at ¶¶ 6-7).

2

also points out that plaintiff failed to designate an expert or produce any expert testimony on causation under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. 9:2800.52. Finally, the motion contests the applicability of *res ipsa loquitor* in this case. (Doc. 55). Plaintiff filed no opposition to this motion.

All necessary delays have now lapsed and the court finds the motions ripe for decision.

### C. Applicable Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "We consider all evidence 'in the light most favorable to the party resisting the motion.'" Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 quoting Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983). However, the non-moving party does not establish a genuine dispute with "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there is no genuine dispute as to any material fact, and (2) the movant is entitled to judgment as a matter of law.

Claims rooted in negligence theory are subject to the duty-risk analysis adopted by Louisiana courts. Under this analysis, plaintiff must demonstrate: (1) that he suffered an injury; (2) that the defendant owed a duty of care to the plaintiff; (3) that the defendant breached that duty; (4) that the conduct constituting the breach was the cause-in-fact of the resulting harm; and (5) that the risk of the harm inflicted was within the scope of protection intended by the defendant's duty.

Doe v. Mckesson, 2019 WL 3729587 (5th Cir. 2019) *citing* Lazard v. Foti, 859 So.2d 656 (La. 2003).

Strict liability may also be imposed under La Civ. C. Art. 2317, which provides, with some exceptions, that a person is responsible for harm caused by things within his custody. To recover under this theory, plaintiff must show that: (1) he was injured by a thing; (2) that the thing was in the defendant's custody; (3) that there was a vice or defect creating an unreasonable risk of harm in the thing; and (4) that the plaintiff's injury arose from the defect. In re FEMA Trailer Formaldehyde Products Liability Litigation, 838 F.Supp. 2d 497, 511 (E.D. La. 2012) *citing* Spott v. Otis Elevator Co., 601 So.2d 1355, 1363 (La. 1992). Plaintiff must also show that the defendant had *garde* of the thing in question at the time of the injury. *Garde* is a legal obligation arising from the dual elements of direction or control over the thing and the derivation of benefit from the thing. Id., *citing* King v. Louviere, 543 So.2d 1327, 1329 (La. 1989); Dupree v. City of New Orleans, 765 So.2d 1002, 1009 (La. 2000), *inter alia*.

The LPLA provides the exclusive remedy against manufacturers for damages cause by their product when plaintiff can show that the product was unreasonably dangerous, and plaintiff's damages arose from a reasonably anticipated use of the product. La. R.S. 9:2800.52(A). Under the LPLA, a product may unreasonably dangerous in its: (1) construction or composition; (2) design; (3) inadequate warnings; or (4) failure to conform to an express warranty. La. R.S. 9:2800.54(A). In order to recover against a manufacturer according to these provisions, plaintiff must show that: (1) the defendant manufactured the product; (2) the product was unreasonably dangerous for the reasonably anticipated use at issue; and (3) the dangerous characteristic of the product existed at the time the product left the manufacturer's control. Malbrough v. Crown Equipment Corp., 392 F.3d 135 (5th Cir. 2004); Despaux v. RSC Equipment Rental, Inc., 246

4

So.3d 806 (La. App. 4 Cir. 2018) *citing* George v. Housing Authority of New Orleans, 906 So.2d 1282, 1286 (La. App. 4 Cir. 2005).

II. ANALYSIS

A federal court sitting in diversity applies the substantive law of the forum state. Salve Regina College v. Russell, 499 U.S. 225, 226 (1991) *citing* Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Accordingly, plaintiff's claims in this matter are governed by Louisiana substantive law.

We address the two pending motions simultaneously, based on our finding that identical evidentiary issues dominate their resolution. Plaintiff's claims against United, the owner of the mechanical lift, and JLG, the manufacturer of the mechanical lift, fall within the ambit of Louisiana's law of torts. Though plaintiff's claims against United arise out of La. Civ. C. Art. 2317.1 and those against JGL arise out of the LPLA, both require plaintiff to produce evidence of some unreasonably dangerous condition or defect in manufacture or design that caused Young's injury and subsequent death. Llorence v. Broadmoor Shopping Center, Inc., 76 So.3d 134, 137 (La. App. 3 Cir. 2011) *quoting* Bethea v. Great Atl. & Pac. Tea Co., 22 So.3d 1114, 1115 (La. App. 4 Cir. 2009); Stewart v. Capital Safety USA, 867 F.3d 517, 520 (5th Cir. 2017) *citing* Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 260-61 (5th Cir. 2002).

Plaintiff's complaint alleges that the lift manufactured by JLG and owned by United was "defective, unreasonably dangerous and malfunctioned." (Doc. 1-1 at ¶7). The complaint further alleges that both JLG and United breached warranties and are strictly liable to plaintiff for Young's injuries and death. (Id. at ¶¶ 7-8). Alternatively, plaintiff's complaint asserts that Young's injuries and death were caused by acts of negligence unknown to plaintiff but warranting the application of the doctrine of *res ipsa loquitur*. (Id. at ¶ 9). Again, these theories hinge upon the existence of some defect in the lift used by Young, as alleged in plaintiff's complaint.

In support of their motions, United and JLG offer the investigative findings of Jeremy Hoffpauir, an engineer with U.S. Forensic, hired by United to inspect the lift after Young's accident. Hoffpauir performed his inspection on October 22, 2016, two days after the accident, and encountered the lift laying on its back, platform extended, just as it had fallen at the time of the accident. (Doc. 44-6 at ¶¶6-8). Hoffpauir observed a 100-foot long fire hose essentially tied to the platform railing of the lift. (Id. at ¶ 13). Hoffpauir opined that, given the weight of the lift and its wheelbase, the water-filled hose resulted in horizontal force greater than that necessary to tip the lift backward, especially when paired with the fact that the hose was stretched taut between its valve connection and the point at which it was tied to the lift. Hoffpauir summarized the catastrophic event as follows:

> [d]ue to the minimal amount of slack that remained in the fire hose combined with the structural obstructions in the area, the tip-over event occurred as the forward movement of the JLG exhausted the slack in the fire hose that was attached to the platform, halting the forward motion of the platform. The taut fire hose imparted a rearward directed force on the platform and caused the vertical lift to tip over rearward. (Id. at ¶ 34e).

Hoffpauir reached this conclusion after his inspection revealed that the standard mechanisms and safety features of the lift were each in working order and, thus, not a factor in the accident. (Id. at ¶¶ 18-32). Moreover, Hoffpauir's affidavit expressly finds that, "[t]here were no defects in the lift that caused or contributed to the tip-over event." (Id. at ¶ 32).

United and JLG also offer the investigative report of German Pellets employee James Pate ("Pate"), employed by German Pellets as its HR Manager. (Doc. 44-5). Pate's sworn declaration states that he assisted Jason Claborn, Safety Manager, with the investigation of Young's accident, which revealed that Young violated company policy forbidding him from using equipment rented to contractors working at the plant when he used the lift to wash the silos on October 20, 2016.

6

(Id. at ¶¶5a-c). Company policy prohibited Young from operating the lift without benefit of proper training, which Pate attests Young had not received at the time he operated the lift. (Id. at ¶¶5d-f). Pate's declaration further attests that several employees observed Young using the lift to wash silos just before the accident in question. (Id. at ¶5j).

United and JLG point out that plaintiff presents no evidence of a defect in the lift to rebut the investigations and reports of Hoffpauir or Pate. Defendants' motions assert that plaintiff's failure to offer expert testimony regarding the existence of a defect in the lift or its design is fatal to plaintiff's claims against them. While not every case requires the presentation of expert testimony to establish the existence of a defect, the court finds this case to be of the sort requiring expert testimony.[2]

Finding that the existence of a defect or unreasonably dangerous condition is central to plaintiff's claims against both United and JLG, we conclude that plaintiff fails to carry her burden of proof in this matter. Defendants offer evidence tending to refute the existence of a defect in the lift in question, none of which is rebutted by plaintiff. Plaintiff, as non-moving party, has an affirmative duty to respond defendants' motions with facts and evidence demonstrating the existence of genuine issues for trial. Anderson, 477 U.S. 242, 248-49 (1986) *citing* First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968). Moreover, plaintiff fails to offer evidence sufficiently excluding all other possible causes of Young's accident, injury and death, barring application of the doctrine of *res ipsa loquitor*. Winans v. Rockwell Intern. Corp., 705 F.2d 1449 (5th Cir. 1983).

---

[2] "As both this Court and Louisiana courts have recognized, for expert testimony not to be required in a products liability case, "the product itself, or at least the…feature in question, must be relatively uncomplicated, and the implications…such that a layman could readily grasp them." Lavespere v. Niagara Mach. & Tool Works, Inc., 91-F.2d 167, 184 (5th Cir. 1990) (citations omitted), *abrogated on other grounds by* Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994) (en banc).

III. CONCLUSION

Given plaintiff's failure to present evidence as to the central issue of defect or unreasonably dangerous condition in this case, we find that the motions filed by both United and JLG should be GRANTED in full, dismissing all claims against them by plaintiff in this case.

A judgment will be filed in conformity with this finding.

Alexandria, Louisiana
September 14, 2019

DEE D. DRELL, JUDGE
UNITED STATES DISTRICT COURT